16090

SCOTT v. GREENVILLE PHARMACY, INC.

(48 S. E. (2d) 824)

*Mr. John M. Schofield,* of Walhalla, for Appellant, ▮

*Mr. Stephen Nettles,* of Greenville, for Respondent, ▮

June 10, 1948.

FISHBURNE, J.: This action was brought to recover of the defendant damages alleged to have been sustained by the plaintiff, in consequence of the defendant having sold barbiturate capsules to her husband, which resulted in his death. The lower Court sustained the demurrer to the complaint, hence, this appeal.

The respondent is a corporation and conducts a drug store in the City of Greenville, South Carolina. The appellant is the widow of the decedent, Howard B. Scott, and the action is brought by her as the qualified administratrix of his estate for wrongful death under Sections 411-412 of the Code.

The complaint alleges in substance: That the latter part of the year 1945, in November or December, Howard B.

Scott suffered from a cold, which later developed into flu, leaving him in a very nervous condition. To alleviate this condition, he went to the drug store of the Greenville Pharmacy and asked for some drug which would "ease his nervousness and promote sleep". In response to his request he was sold barbiturate capsules in a box or container without any label showing the contents thereof; and that periodically thereafter, over a period of about a year preceding his death, the respondent, at his request, continued to sell him the capsules. It is alleged that the sale of the barbiturate capsules without a doctor's prescription is prohibited by the laws of this State (Section 5128-25), and that neither at the time of the original sale or at any time thereafter did the deceased, Howard B. Scott, have a doctor's prescription; nor at any time did respondent in making such sales label the box containing the capsules.

It is further charged that the barbiturate preparation in question is a habit forming drug; that Scott was not advised of its nature, and that as a result of taking the capsules he became habituated to the use of the drug, in consequence of which he deteriorated mentally and physically. While under the influence of the drug, or while suffering from moroseness, caused by its habitual use, Scott committed suicide by hanging. The complaint concludes with the allegation that the capsules were sold to Scott in violation of law and that his death by suicide was the proximate result of the acts of respondent in making the sales to him.

This action, as stated, is brought under Section 411, which reads as follows:

"Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such

case, the person or corporation who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony".

Of course, if the deceased never had a cause of action, none accrues under the wrongful death statute.

The condition that the action be one which could have been maintained by the deceased if death had not ensued has reference to the circumstances attending the injury, and the nature of the wrongful act or omission which is made the basis of the action.

In actions for wrongful death, as in the case of actions for personal injuries generally, it is essential to a recovery of damages that the wrongful act or default of the defendant shall have been the proximate cause of the death resulting therefrom. It is axiomatic that the violation of a statute, while negligence *per se,* will not support a recovery for damages unless such violation proximately caused or contributed to the injuries complained of. *Locklear v. Southeastern Stages, Inc.,* 193 S. C. 309, 8 S. E. (2d) 321. *Crawford v. Atlantic Coast Line R. Co.,* 179 S. C. 264, 184 S. E. 569.

Section 5128-25 with which the respondent is charged with having violated in the sale of the barbiturate capsules, provides that any person, firm or corporation selling any of that general class of synthetic drugs, commonly known as barbiturates or their counterparts, except upon the written prescription of a licensed physician, shall be deemed guilty of a misdemeanor. It is further provided that any person dispensing such drugs upon such prescription shall place them in a container with the name and address of the person prescribing them, together with the name and address of the person dispensing them plainly printed or written thereon. Any person, firm or corporation violating these

provisions shall be deemed guilty of a misdemeanor. It is likewise made a misdemeanor for any person other than a physician, etc., to possess such synthetic drugs or their compounds, unless such container shall either contain the name and address of the person prescribing it, or the name and address of the person dispensing such drug.

The demurrer raises the issue that the drug habit of Scott, the decedent, was a direct consequence of his own voluntary act in taking the barbiturate capsules, and not the result of the sale of the drug to him. It is, therefore, contended that he had no right of action against the respondent, and consequently his administratrix could have no right of action under Section 411 of the Code. It is argued that the consumption is an act independent of and distinct from the sale, depending entirely upon the free will of the purchaser, and the consumption and not the sale is the proximate cause of any resulting injury. Accordingly, the deceased, by the exercise of ordinary care, might have escaped making himself a drug addict. By not doing so, he was the author of his own death.

The liability, if any, of the respondent depends upon the nature and quality of its act in making the sales. This act takes its legal quality and color, not only from what respondent did in making the sales, but from the presence or absence on the decedent's part of such contributory negligence in his conduct at the time as would bar him had he lived and sued. The presence of such contributory negligence, if it existed, is an essential part of the legal quality of the act, as imposing liability between the decedent and the respondent. It is only where he, had he survived, could have sued, that appellant, if he dies, can sue. The action is statutory and must fall within the statute.

The complaint sets forth that Scott, from time to time during a period of about a year bought barbiturate capsules from respondent in Greenville, and that at the end

of such time committed suicide by hanging himself in Reidsville, North Carolina, on November 2, 1946.

It is nowhere specifically alleged that the deceased was incapable of consenting to any one or more of the sales of capsules, or that the respondent had any knowledge that he was incapable or lacked volition in making such purchases. There is nothing to show that he lacked self-control or judgment, or that he appeared to be under the influence of any drug when he applied for the capsules.

Respondent contends that it appears on the face of the complaint that the voluntary use of the barbiturate capsules by the deceased was the proximate cause of his death. To sustain this position the case of *King v. Henkie,* 80 Ala. 505, 60 Am. Rep. 119 is cited. The allegations in the *Alabama case* were that the defendant knew that the deceased was a man of known intemperate habits, that he went into the "saloon in a helpless state of intoxication, destitute of sense and reason, this sense and reason being overthrown by the use of intoxicating liquor; and his mental faculties thereby so impaired that he did not know what he was doing, and incapable of knowing what he did, and incapable of consenting to anything ;and that, in this condition of helplessness and mental darkness, the defendants then and there, knowing his mental condition, his want of mental power to consent to anything, or to know what he was doing", sold, etc. The court said that this voluntary act in drinking was the proximate cause of the death, and that this "must be true, whatever the condition of his mind or state of his intellect".

The case of *King v. Henkie, supra,* was brought under a wrongful death statute, similar to ours, and the decision is based upon questions of proximate cause and contributory negligence. The court took the view that while it was a misdemeanor to furnish liquor to a person of known intemperate habits, the defendant's wrongful act in furnish-

ing the deceased with liquor was only the remote, not the proximate, cause of the consumer's death. The court said: "Had it not been for the drinking of the liquor after the sale, which was a secondary or intervening cause cooperating to produce the fatal result, and was the act of deceased, not of defendants, the sale itself would have proved entirely harmless. Hence it cannot be said that the wrongful act of the defendants in making sale of the liquor caused the death of King, but rather, his own act of drinking it. And this must be true, whatever the condition of his mind or state of his intellect, and without regard to the question of any contributory negligence on his part".

We do not wish to be understood as approving everything that is said in the Alabama decision in all its breadth. We confine ourselves to the case made by this record. Whether one who sells barbiturate capsules in violation of Section 5128-25 to another with knowledge that such other is entirely irresponsible and without mind, is absolutely liable for all that follows, we do not now decide. It is enough that the allegations of the complaint lack much of describing Scott as being without mind or lacking in volition.

We think the inference is inescapable that Scott knew the nature of the drug. He certainly must have known it after taking the capsules following his first purchase. He continued to make periodic purchases and the complaint alleges that he acquired the drug habit. But long before he became an addict he must have realized the effect the drug was having on him, and, if he had survived and brought this suit, he would not have been heard to say that he was not taking a narcotic. His own contributory negligence would bar the action. It is true that contributory negligence is a defense, and the complaint need not allege its absence; but when, as here, the complaint on its face avers facts showing contributory negligence, the defense by demurrer is then as perfect as the defense would be later on the facts showing in evidence the contributory negligence.

It follows that the decedent, had he survived, could not have maintained the action. To the same effect see: *Meyer v. King,* 72 Miss. 1, 16 So. 245, 35 L. R. A. 474; *Bissell v. Starzinger,* 112 Iowa 266, 83 N. W. 1065; *Waller's Administrator v. Collinsworth,* 144 Ky. 3, 137 S. W. 766, 44 L. R. A., N. S., 299, Ann. Cas. 1913-A, 510. Generally on this subject see Annotation 130 A. L. R. 352.

In many cases involving the issue under consideration, the doctrine of "the last clear chance" is invoked. This principle is stated in 2 Restatement of the Law of Torts, pp. 1257, 1258, Sec. 480:

"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant (a) knew of the plaintiff's situation, and (b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff".

This is sound law. *Seay v. Southern Railway— Carolina Division,* 205 S. C. 162, 31 S. E. (2d) 133. But the allegations of the complaint, on the most liberal construction, fall far short of presenting the case of one who was no longer a free agent incapable of controlling his own conduct, and bent upon suicide. Nor, even if this had been alleged, is there any averment that respondent knew of any such condition.

The respondent argues that in no event could it be held liable on the theory of proximate cause. In every case of this character the inquiry is: Was the injury a natural and probable consequence of the wrongful act, and ought it to have been foreseen in the light of the attendant circumstances? In this case the deceased took his

own life by hanging. Can it be reasonably said that his tragic end was a natural and probable consequence of the sale to him of the barbiturate capsules, and should it have been foreseen in the normal course of events? Each case must be decided largely on the special facts belonging to it.

It might be that respondent should reasonably have foreseen that the deceased would become a drug addict but not that Scott would kill himself. All that can be said is that respondent's unlawful act could have produced a condition of mind out of which the tragedy might have resulted. However, so many elements may enter into a suicide that it is impossible to say that it was the natural and probable consequence of the negligence. In order to reach such a conclusion, we would have to eliminate entirely all those elements of feeling, temperament, disposition, emotional disorders, background and lack of self-control, which might of themselves have been sufficient to bring about the tragic result, even though the person committing suicide had not been under the influence of a drug.

While it may be true that some suicides may result from the excessive use of drugs, such as barbiturates, yet, as a vast majority of the people who use this form of drug do not commit suicide, it could not be said that he who sells the drug may reasonably contemplate that suicide will follow.

The court stated in *Locklear v. Southeastern Stages, Inc.,* 193 S. C. 309, 8 S. E. (2d) 321, 325—"The test, therefore, by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent act of another, is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in the light of attendant circumstances. The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, there is

no liability. One is not charged with foreseeing that which is unpredictable or that which could not be expected to happen."

The voluntary willful act of suicide of an injured person, who knows the purpose and physical effect of his act, is generally held to be such a new and independent agency as does not come within and complete a line of causation from the injury to the death so as to render the one responsible for the injury civilly liable for the death. 16 Am. Jur. Section 81, Page 60.

We think it would be going entirely too far in this case, on the face of the complaint to hold that the unlawful sale of the barbiturate capsules brought about a condition or suicidal mania as the natural and probable consequence of the sale, or that this result should have been reasonably foreseen by the respondent. As the complaint fails to state a cause of action, it follows that the judgment dismissing it must be affirmed.

This disposition of the case makes it unnecessary to pass upon (a) whether the action can be maintained as brought because the complaint fails to allege the names of the beneficiaries of the action under Section 412 of the Code, or (b) whether the decedent's violation of Section 5128-25 by possessing barbiturate tablets in an unlabeled container is in such a sense the proximate cause of his suicidal death as to bar him from recovery. An interesting discussion of the latter question is included in the Annotation in 36 Am. St. R. 807, 818.

Judgment affirmed.

STUKES, TAYLOR and OXNER, JJ., concur.

BAKER, C.J., concurs in result.