16527

DAWSON v. SOUTH CAROLINA POWER CO.

(66 S. E. (2d) 322)

*Mr. G. L. B. Rivers,* of Charleston, *for Appellant,*

*Messrs. Meyer, Goldberg & Hollings,* of Charleston, *for respondent,*

July 30, 1951.

STUKES, Justice

This is an appeal from judgment for $10,000.00. actual damages and $10,000.00 punitive damages for wrongful death. Sections 411, 412, Code of 1942. The deceased, who was respondent's wife and the mother of three adult chil-

dren, was leaving her home on the east side of Meeting Street Road, near the City of Charleston, to join friends who had parked their automobile about opposite her gate and across the road, when she was struck and killed by appellant's passenger bus. She waved to them as she left her porch. They (two ladies) testified for appellant but they admitted that their view of the accident was obstructed by the bus with which the deceased collided. They did not see or hear it or any warning until it was close upon them and they did see the deceased look for approaching vehicles. The road was straight for long distances in both directions and there were no obstructions of consequence to the vision of travelers. It was a clear afternoon, about 3 o'clock. The police testified for respondent that children just dismissed from a neighboring school were on the road immediately afterward, which was contradicted by defense witnesses, or at least the latter said the children were not there before or at the time of the accident.

The bus was traveling north and approaching a scheduled stop which was about 150 feet from the point of collision. It proceeded practically to the "stop" before coming to rest after the accident. There was no other nearby traffic. Respondent's witnesses, two of whom were county police officers who reached the scene very promptly, testified to signs on the extreme right front corner of the bus of contact with the head of the deceased, with continued like evidences across the folding door there located, but by all accounts deceased's head was finally crushed by contact with the protruding frame at the rear of the door. Death was instant, or very nearly so. The body came to rest on the edge of the pavement. The paved area of the roadway was of the width of 27 feet and adjoining was a sand-asphalt shoulder of 1.5 feet and between it and the 3-foot concrete sidewalk was a grass-covered earth shoulder 10.5 feet wide. A large scale map and police department photographs of the scene were in evidence.

A principal witness for respondent was a colored store-keeper who happened to be in front of his nearby corner store and saw the accident. He testified that the deceased came from her gate to the pavement and looked in both directions, made four or five steps into the road, then stepped back two or three feet and stood still. The fast approaching bus turned toward the right when near her, then to the left and finally back to the right and struck the deceased. This witness said that the bus was running from 40 to 45 miles an hour and the horn was not sounded and there was no sign of braking. The testimony of another bystander eye-witness was substantially the same although he was not definite that deceased was still when struck. He said: "She made a look up and down the road, and stepped out into the road, and then she hesitated and stepped back, and when she stepped back, that is the time it struck her." He estimated the speed of the bus at between 35 and 40 miles per hour; there was no blowing of the horn or other warning signal and no use of the brakes, he said.

The driver of the bus testified that his speed was from 20 to 25 miles an hour, reduced to from 15 to 20 by the time of the collision. He first saw the deceased only a second or two before the impact when the bus was 20 to 25 feet distant and he swerved to his left but the deceased kept coming toward the bus and ran into the side of it. He then applied the brakes. He did not sound his horn. However, a police officer had earlier testified for respondent that the driver told him at the scene that he did not see the deceased before the collision; and a State Highway Patrolman testified in reply, in contradiction of the driver, that the latter said immediately after the collision that he was driving 30 miles per hour. The statutory maximum speed at that point was 35 miles per hour which is qualified by the following from Sec. 60 of art. VI of the Uniform Highway Traffic Act of 1949, 46 Stat. at L., pages 486, 487:

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the

conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"(b) Where no special hazard exists that requires lower speed for compliance with (a) of this section the speed of any vehicle not in excess of the limits specified in this section or established as hereinafter authorized shall be lawful,  *  *  *."

Shortly after the accident the officers obtained a written statement by the driver of the bus which was introduced in evidence. Part of it follows: " saw a car parked on the left of the road and a lady walked out of a house, and across a little grass plot on the right of the road. I looked at the car on the left and just as I glanced back I saw the lady run into the side of the bus. I made all attempts possible to pull the bus to the left to avoid the accident, and stopped the bus in about 125 feet." Important variance is noted between this statement and the driver's testimony at the trial, some of which is recounted above. He explained his failure of memory as follows: "Well, I was so upset, I disremember. It's been quite a long time."

Timely motions were made by appellant for nonsuit, directed verdict and judgment *non obstante veredicto,* all of which were denied, and they are the subject of appeal. Appllant's first two questions may properly be considered together. They embody the contentions that the only reasonable inferences from the evidence are, first that the negligence and recklessness of the deceased was the sole proximate cause of her death, and, second, that she was guilty of contributory negligence and wilfulness which bars recovery. It is relatively easy to answer the first question adversely to appellant. Enough of the evidence has been stated to show that there was proof of negligence on the part of the driver

and evidence of wilfulness. According to his statement when the facts were fresh in his mind, he saw the beginning of the attempt by the deceased to cross the road despite the bus but gave no warning of his approach and made no effort to stop. There was a wide and unobstructed paved area of the road through which he could have guided the bus and avoided the collision. We think it is reasonable to infer from the facts that he was bearing to the right in approaching the bus stop, about 150 feet away, and failed to exercise any care with respect to decedent.

The second point, that the only reasonable inference from the evidence is that decedent was contributorily guilty of negligence and wilfulness, is more difficult. But we do not think that such is the only reasonable inference, which made of it an issue for the jury. According to the testimony introduced by respondent the deceased looked in both directions for approaching vehicles and must have seen the bus because she stepped back from its path, but a few inches short of safety. The court may say that if we had been in the place of the jury, in consideration of the printed record and exhibits, we should have found a contrary verdict, but the members of the jury are the factfinders, not the court. Only when the court is convinced that but one reasonable inference can be drawn from the evidence in a law case does a contended issue of fact become one of law for the court. This is not such a case.

Applicable, and embraced in the instructions to the jury, were the following provisions of art. X of the Uniform Highway Traffic Act of 1949, 46 Stat. at L. 466, 497, cited above with respect to the speed of the bus:

"Section 92. Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

\* \* \*

"Section 93. Notwithstanding the foregoing provisions of this article every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

It may be reasonably inferred from the evidence that the deceased undertook to yield the right of way; she did not try to cross in front of the bus and never got in front of it. The vast majority of the unusually wide pavement was available for free and safe passage of the bus. It was for the jury to say whether the bus was operated negligently and in wilful disregard of the safety of the deceased, at excessive speed, without proper lookout and without use of horn or brakes. "It is firmly established in this jurisdiction that if the inferences properly deducible from the evidence are doubtful, or if they tend to show both parties guilty of negligence or wilfulness, and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question must be submitted to the jury. *Ford v. Atlantic Coast Line Railroad Co.*, 169 S. C. 41, 168 S. E. 143." *Harrison v. A. C. L. R. Co.*, 196 S. C. 259, 13 S. E. (2d) 137, 141.

Appellant relies heavily in argument upon the decision in the case of *Wright, plaintiff, against it* [*South Carolina Power Co.*] 205 S. C. 327, 31 S. E. (2d) 904, in which direction of verdict in its favor was sustained. However, the facts differentiate that case from this. There, in traffic, the deceased, tried to pass in front of the bus, while other pedestrians waited, and she was struck by the center of the front of the vehicle. It was found that the operator of the bus was without negligence, but granting the contrary, the only reasonable inference derivable from the evidence was that the deceased was guilty of contributory negligence, which barred

recovery anyway; it was conceded by the plaintiff in that case that there was no evidence of recklessness or wilfulness on the part of the defendant, which is not so in the instant case. Similar differentiation of the *Wright case* was made in *Drag v. Ellis,* 207 S. C. 416, 36 S. E. (2d) 73. In the opinion in the latter there are quoted the pedestrian provisions of the Charleston municipal traffic ordinance which are of the same effect as the corresponding State law, set out above and here applicable. *Drag v. Ellis* was a jaywalking (between street intersections) case, as is that in hand.

Other late pedestrian accident cases in which verdicts for the plaintiffs were sustained are *Fabian v. Rephan,* 192 S. C. 483, 7 S. E. (2d) 223, 225, and *Spearman v. Couch.* 218 S. C. 430, 63 S. E. (2d) 161. Both involved crossings at street intersections but that fact appears to have been of no important influence upon the decisions. In the first cited it was said in the statement of facts in the opinion: "This testimony was corroborated by other witnesses, who testified also that there was plenty of room for the truck to pass between plaintiff and the west curb that instead of doing so, it was being driven all over the street, and swerved to the left, at the point where plaintiff was standing, and knocked him down." In the second, the plaintiff was injured at the edge of the paved roadway as he was retreating from former attempts to cross. Similarity in the facts of those cases and this is seen. Section 1616 of the Code of 1942 which governed the last cited case has been supplanted by the Uniform Highway Traffic Act of 1949, quoted in applicable part hereinabove.

*Marks v. I. M. Pearlstine & Sons,* 203 S. C. 318, 26 S. E. (2d) 835, 840, concerned with a pedestrian fatality, came between the two cases just cited and appears to have been a jaywalking case. Judgment of $15,-000.00 for plaintiff was sustained. What was there said relating to contributory negligence is pertinent here, as follows: "To have authorized the trial Judge to hold as a mat-

ter of law that the plaintiff's cause of action was barred by contributory negligence, the testimony must have been susceptible of no other reasonable inference than that the injury and death of the intestate resulted from her negligence concurring with the actionable negligence of the defendant and contributing to the injury and death as a proximate cause thereof. ·  *   *   *

"Contributory negligence ceases to be a defense when the injury complained of is shown to have been done willfully or purposely or where it was the result of such gross negligence as would imply wantonness or recklessness. (Citing many earlier authorities.)

It is not necessary to decide the question but the evidence was susceptible of an inference of gross negligence on the part of the defendant amounting to willfulness and wantonness."

In the well-prepared brief of respondent there is cited the helpful pedestrian accident case of *Williams v. Henderson*, 230 N. C. 707, 55 S. E. (2d) 462, 463, of very smilar facts to those presented in the instant case. Nonsuit was reversed and the court said the following, supported by citations of texts and decisions of many jurisdictions which we omit from the quotation:

"While a driver of a motor vehicle is not required to anticipate that a pedestrian seen in a place of safety will leave it and get in the danger zone until some demonstration or movement on his part reasonably indicates that fact, he must give warning to one on the highway or in close proximity to it, and not on a sidewalk, who is apparently oblivious of the approach of the car or one whom the driver in the exercise of ordinary care may reasonably anticipate will come into his way.

"It is his duty to sound his horn in order that a pedestrian unaware of his approach may have timely warning. If it appears that the pedestrian is oblivious for the moment of the nearness of the car and of the speed at which it is

approaching, ordinary care requires him to blow his horn, slow down, and, if necessary, stop to avoid inflicting injury.

"He must make certain that pedestrians in front of him are aware of his approach. And when it is apparent the pedestrian is oblivious of his approach he is bound to realize the hazard of driving his vehicle at a high rate of speed so close to the pedestrian that he might be taken unawares by the sudden discovery of the vehicle and make such deviation as to bring him in front of it.

"Here the defendant was operating his heavily loaded truck at 45 to 50 miles per hour within 150 feet of the vehicle just ahead. As the road was straight he saw or should have seen the deceased on the shoulder of the highway standing at the mail box even before the first truck passed her. She had her back to him and was apparently oblivious of his approach. Yet he did not slacken his speed or apply his brakes or sound his horn. These circumstances present a case for the jury.

"Of course it was the duty of the deceased to look before she started back across the highway. Even so, under the circumstances here disclosed, her failure so to do may not be said to constitute contributory negligence as a matter of law. It is for the jury to say whether her neglect in this respect was one of the proximate causes of her injury and death."

The trial court did not err in submitting the issues to the jury in this case; and there is no allegation of error with respect to the instructions.

Appellant finally contends that the amount of the verdict shows that it was the result of passion and prejudice of the jury. No precedents thereabout have been cited by appellant in the brief but the argument is that the amount of punitive damages supports the contention. On the contrary, the verdict for actual damages in this death case evidences moderation rather than passion and prejudice; and the verdict for punitive damages is not in such amount as to warrant

reversal on that account. There is no exact measure of what they should be. The trial judge had this to say upon motions for judgment notwithstanding the verdict and for new trial, with which we agree: "The operation of the bus upon the highway without a proper lookout and at such speed as this bus was evidently making at the time and in the presence of school children upon the highway was sufficient to support the verdict," and further:

"I was very much impressed by the close interest and attention paid by the jurors throughout the trial to the witnesses and to the arguments of counsel on both sides. The jurors appeared to be substantial citizens who knew the value of money, and they were substantial men who could not be swayed against the facts of the case. The case was conducted in a manner commendably free from anything which could be said to tend to arouse sympathy or unduly prejudice the jurors in favor of the Plaintiff. I do not think that the jury was actuated by passion or prejudice or other improper motive in arriving at their verdict; and on the contrary, their verdict is well supported by the testimony and the reasonable inferences therefrom."

Under all of the circumstances, we cannot say that the trial judge abused his discretion when he refused to disturb the virdict because of alleged excessiveness. *Bowers v. Charleston & W. C. Ry. Co.* (both opinions) 210 S. C. 367, 42 S. E. (2d) 705.

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.