GREENE v. MILLER et al.

No. C. A. 1260.

United States District Court
W. D. South Carolina, Greenwood Division.

July 15, 1953.

Thomas H. Pope and C. E. Saint-Amand, Newberry, S. C., for plaintiff.

Whaley & McCutchen, Columbia, S. C., L. Marion Gressette, St. Matthews, S. C., for defendants.

WYCHE, Chief Judge.

This action for wrongful death was commenced by Ruth Greene, as Administratrix of the Estate of George B. Greene, deceased, pursuant to the provisions of Sections 10-1951 to 10-1954, Code of Laws of South Carolina, 1952, and pursuant to the subrogation provisions of the South Carolina Workmen's Compensation Act. At the time of his death, the deceased was a covered employee within the terms of the South Carolina Workmen's Compensation Act, and National Surety Corporation, as carrier, is subrogated to the extent of the payments made pursuant to such Act. Plaintiff brings this action for the benefit of the surviving widow and children of the deceased, and for the benefit of National Surety Corporation, as subrogee.

On the 18th day of June, 1951, at about three o'clock p. m., plaintiff's intestate was run over and killed by a Mack tractor and trailer belonging to the defendant O. Alex Hicklin, at a point on South Carolina Highway 20-12, approximately one mile east of Blairs, South Carolina.

The defendant Heck Young is in default.

With the consent of counsel for the defendants, plaintiff's motion to dismiss as to the defendant National Indemnity Company was granted. At the conclusion of plaintiff's case, I granted plaintiff's motion to amend the complaint to conform to the proof so as to allege gross negligence and gross carelessness.

Just before the concluding arguments and with the consent and in the presence of counsel for the parties, I viewed the scene and the approaches to it.

In compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon in the above cause as follows:

#### Findings of Fact

On June 18, 1951, plaintiff's intestate George B. Greene, then thirty-seven years of age, and in good health, was driving an empty truck, unaccompanied by any passengers, toward Blairs, South Carolina, along paved South Carolina highway 20-12, and stopped it on the right-hand edge of the paved highway approximately one mile east of Blairs, South Carolina.

Greene dismounted from his truck and was standing by the left front fender with a lug wrench in his hand when two trucks approached him from opposite directions. He waved the lug wrench in both directions, evidently attempting to stop both trucks. The truck belonging to the defendant Hicklin, and hereinafter referred to as the Miller truck, was approaching with a load of gravel from the direction of

Blairs, South Carolina, and going in the direction of Newberry, South Carolina. A pulpwood truck, belonging to the defendant Heck Young and driven by Young's minor son, was approaching from the direction of Newberry, South Carolina, and traveling toward Blairs, South Carolina; the latter was being driven at a high and excessive rate of speed, was without brakes, and was zigzagging across the highway.

As the driver of the Miller truck approached a bridge across Rocky Creek, he observed Greene and his parked truck, which was parked a distance of four hundred, forty-six feet beyond the Rocky Creek bridge in the direction of Newberry. The driver of the Miller truck saw Greene turn in the opposite direction and attempt to flag down the Young truck. After observing Greene and his signals, the two trucks made no attempt to stop, but continued forward with unabated speed, and the driver of the Miller truck changed gears in order to maintain his speed uphill. The Miller truck was equipped with air brakes in good condition, capable of stopping the truck in a distance of ten to fifteen feet when traveling at twenty-five miles per hour.

When the driver of the Miller truck first saw the Young truck approaching, the Young truck was traveling at a rate of speed between fifty and sixty miles per hour; at that time the two approaching trucks were the same distance from the parked Greene truck; and they passed the Greene truck at the same time, the pulpwood truck passing it on the right and the Miller truck passing it on the left. Just prior to passing the Greene truck, the pulpwood truck veered to its left, and apparently was going to meet the Miller truck head-on. The driver of the Miller truck did not apply his brakes, slow down, or drive on the shoulder; he continued forward because as he said he had "the right-of-way". Greene was apparently confused and realized his peril; he attempted to get out of the path of the two approaching trucks. Suddenly the pulpwood truck veered back to its right, crossed the ditch and rode the steep embankment like a motorcycle on a Hippodrome, thereby cutting off Greene's escape on that side. Greene attempted to avoid being run down by the pulpwood truck and in doing so was run over and killed by the Miller truck. When the Miller truck stopped it was eighty-four feet up the hill from the dead body of Greene, and the pulpwood truck was three hundred feet down the hill from the dead body of Greene.

Plaintiff introduced in evidence a very comprehensive plat of the section of roadway in question. The paved portion of the road is twenty feet wide, the shoulders on either side of the road are approximately three or four feet wide, the ditches along the road are shallow and constant and the embankments beyond the ditches are high and steep. Greene's truck, as stated before, was parked a distance of four hundred, forty-six feet in the direction of Newberry from the bridge across Rocky Creek. The road runs downhill from the direction of Newberry, to Rocky Creek bridge, and uphill from the bridge toward Blairs. At a point on the edge of the pavement four hundred feet from the bridge (marked on the plat by a circle at the 400-foot mark) one is able to see a distance of six hundred, fifty feet toward Newberry, and a distance of eight hundred feet toward Blairs. The condition of the ditches and shoulders were unchanged from the time of this accident until the time of trial and my visit to the premises. The ditches were shallow and the shoulders were firm.

Galloway, the driver of the Miller truck, knew Greene and had seen him on the day of the accident, prior to the time of his death, at the Blairs Quarries, from which both he and Greene were hauling gravel.

From the testimony of all the witnesses, the plat and pictures illustrating the scene, the attendant physical facts and a view of the scene of the accident, I find:

(a) That Herbert Galloway, as the agent, servant and employee of O. Alex Hicklin, d/b/a Miller Trucking Company, while acting within the scope of his employment, was guilty of gross negligence in driving his truck at a speed greater than was reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, in violation of Section 46-361, Code of Laws of South

Carolina, 1952; in failing to drive at an appropriate reduced speed when a special hazard existed with respect to a pedestrian, in violation of Section 46–363, Code of Laws of South Carolina, 1952; in failing to keep a proper lookout; in failing to comply with other statutes of South Carolina relative to due care; in failing to sound his horn, to apply his brakes, to stop or to take any action to avert injury to plaintiff's intestate under all the circumstances.

(b) That Rufus Young, the agent of the defendant Heck Young, while acting within the scope of his employment, was guilty of gross negligence in operating the pulpwood truck at a high, excessive and unlawful rate of speed, in operating said vehicle without proper brakes, in failing to keep a proper lookout, in failing to maintain proper control over his vehicle, and in failing to use due care, all in violation of the statutes of South Carolina.

(c) That the joint and several acts of gross negligence on the part of Herbert Galloway as agent, servant and employee of O. Alex Hicklin, d/b/a Miller Trucking Company, and of Rufus Young as agent of the defendant Heck Young, combined and concurred as the direct, proximate and efficient cause of the injuries to, and death of, plaintiff's intestate George B. Greene.

Plaintiff's intestate George B. Greene was not guilty of any negligence which contributed as a proximate cause to his death.

Plaintiff's intestate was not guilty of contributory wilfullness or contributory wantoness.

The defendant C. G. Miller is a salaried employee of the defendant O. Alex Hicklin and owns no interest in the business known as Miller Trucking Company.

Plaintiff's intestate was an able-bodied white man, thirty-seven years of age, gainfully employed for more than a year prior to his death at an average weekly wage of Forty-Four and 00/100 ($44.00) Dollars, and had a life expectancy of 31.75 years.

Greene died intestate, survived by his widow and two minor children, Patricia Levada Greene, now aged thirteen, and Terry Dean Greene, now aged nine; and the said widow and two minor children were entirely dependent upon the said George B. Greene for their maintenance and support.

As a result of the death of their husband and father, they have suffered actual damages in the sum of Forty Thousand ($40,000) Dollars, out of which sum the subrogee, National Surety Corporation, is entitled to reimbursement for the amount theretofore paid, pursuant to the provisions of the South Carolina Workmen's Compensation Act.

Conclusions of Law, Opinion and Order

This Court has jurisdiction of the parties and of the subject matter of this action.

The defendant O. Alex Hicklin's employee, Herbert Galloway, while acting within the scope of his employment and course of his duties, was guilty of actionable gross negligence; the defendant Heck Young's agent was guilty of actionable gross negligence, and the gross negligence of the two defendants combined and concurred as the direct, proximate and efficient cause of the injuries to and death of plaintiff's intestate George B. Greene.

The death of plaintiff's intestate was not caused or contributed to by the negligence of plaintiff's intestate as a proximate cause thereof. The defendant O. Alex Hicklin contends that plaintiff's intestate was guilty of contributory negligence by violating the parking statute, § 46–481, Code of Laws of South Carolina, 1952. It is true that the violation of a State statute is negligence per se, but, in my opinion, the parking of Green's truck in violation of the parking statute was not the proximate cause of the damages in this case, nor did it contribute to the damages as a proximate cause thereof. I would come to this same conclusion even though I had found that the defendants were guilty of only simple negligence, but in this case I have found as a fact that the defendants were guilty of gross negligence. " 'Contributory negligence ceases to be a defense when the injury complained of is shown to have been done willfully or purposely or where it was the result of such gross negligence as would

imply wantonness or recklessness.'" Dawson v. South Carolina Power Co., 220 S.C. 26, at page 35, 66 S.E.2d 322, 326.

The Supreme Court of South Carolina has, within recent years, adopted the doctrine of "last clear chance". Seay v. Southern R.–Carolina Division, 205 S.C. 162, 31 S.E.2d 133; Durant v. Stuckey, 221 S.C. 342, 70 S.E.2d 473; Jones v. A.–C. Air Line R. Co., 218 S.C. 537, 63 S.E.2d 476, 26 A.L.R.2d 297; Scott v. Greenville Pharmacy, Inc., 212 S.C. 485, 48 S.E.2d 324, 327, 11 A.L.R.2d 745.

By statutory definition, plaintiff's intestate was a pedestrian. § 46–243, Code of Laws of South Carolina, 1952. Section 46–442, Code of Laws of South Carolina, 1952, requires every driver of a vehicle to exercise due care to avoid colliding with any pedestrian upon any roadway and to give warning by sounding the horn when necessary and to exercise proper precaution upon observing any child or confused or incapacitated person upon a roadway. Section 46–582 requires the driver of a motor vehicle, when reasonably necessary to insure a safe operation, to give audible warning with his horn. Section 46–361 prohibits any person from driving a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Section 46–363 provides that the driver of every vehicle shall drive at an appropriate reduced speed when any special hazard exists with respect to pedestrians. Section 46–342 provides that any person who drives any vehicle in such a manner as to indicate either a wilful or wanton disregard for the safety of persons or property is guilty of reckless driving.

The conclusion is evident that plaintiff's intestate was confused and in a position of peril when he observed two trucks bearing down on him from opposite directions. It was obvious that a special hazard existed with respect to Greene, a pedestrian. Greene was frantically waving down traffic. The pulpwood truck of the defendant Young was zigzagging downhill at a high rate of speed and obviously out of control. According to Galloway's testimony, Greene turned his back on him after observing the other truck. Greene could reasonably anticipate that Galloway would stop his truck, slow down his speed or sound his horn if he intended to continue forward. Instead of stopping or reducing his speed, Galloway changed gears to maintain his speed. He continued to bear down upon Greene from the rear. He did not sound his horn nor did he drive his truck off the paved portion of the highway, even though the shoulder was firm and the ditch on his right was shallow. He made no effort to give Greene warning of his continued approach or to avoid reaching Greene at the same time as the pulpwood truck.

In the case of Mason v. Brown, 186 F.2d 555, 557, the Circuit Court of Appeals for the Fourth Circuit recognized and applied the doctrine of "last clear chance". In that case plaintiff was a pedestrian who was run down by defendant's car. The Court assumed, for the purpose of the decision, that plaintiff was negligent in darting out from between two parked cars to cross the street in the middle of the block. The plaintiff was visible from at least two hundred feet distance and there was evidence tending to show that plaintiff had stopped in the middle of the street before defendant entered this range. The Court of Appeals said, inter alia, "From the facts, we think the jury could properly have drawn the conclusion that plaintiff was unable by her own efforts to escape from the dangerous situation into which she had negligently put herself. Going back, across the path of defendant's car, even were she aware of its presence, was clearly out of the question. And going forward, as she testified, into the path of the eastbound car was no remedy." The Court went on to say that the defendant should have seen plaintiff from at least two hundred feet and could have stopped before striking her; that there was sufficient space between plaintiff and the parked cars to permit the defendant to avoid both; and that the defendant should have chosen to drive into the parked cars rather than into plaintiff.

In the instant case, the defendant Hicklin's agent could have seen plaintiff's intestate at a distance of approximately two

hundred, sixty yards. He admits in his deposition that he first saw him at a distance of approximately two hundred yards. He said when he first realized that the Young truck was not going to stop, his tractor had gotten approximately twenty yards from Greene's truck. He said he could have stopped at any time within eighteen feet. He had good brakes and could have stopped, and the shoulder on his right side of the highway was firm and the ditch was shallow. He made no effort to avoid plaintiff's intestate, either by stopping or by driving upon the shoulder. He continued to maintain his speed upon the paved highway and made no effort to stop, or put his truck under control, because as he said he had the right-of-way.

In the case of North State Lumber Co. v. Charleston Consolidated Ry. & Lighting Co., 115 S.C. 267, 105 S.E. 406, 408, the Supreme Court of South Carolina, aptly said: "The erroneous notion seems to be prevalent that, if one has the right of way, as it is called, he may proceed without regard to circumstances, conditions, or consequences. Even when one has the right of way, he is still bound to exercise due care for his own safety, and to prevent injury to others." I expressed my opinion upon this question in the case of Copley v. Stone, D.C., 75 F.Supp., 203.

■ In the case of Williams v. Henderson, 230 N.C. 707, 55 S.E.2d 462, the Supreme Court of North Carolina carefully considered the duty which the driver of an approaching vehicle owes to a pedestrian. This decision was quoted at length and with approval by the South Carolina Supreme Court in the case of Dawson v. South Carolina Power Co., supra, 220 S.C. 26, 66 S.E. 2d 322. In the Williams case, the defendant was operating his heavily loaded truck at forty-five to fifty miles per hour within 150 feet of the vehicle just ahead. As the road was straight he saw or should have seen the deceased on the shoulder of the highway standing at the mail box even before the first truck passed her. She had her back to him and was apparently oblivious of his approach. Yet he did not slacken his speed or apply his brakes or sound his horn.

The Court held that a driver of a motor vehicle owes a duty to sound his horn in order that a pedestrian, unaware of his approach, may have timely warning. If it appears that the pedestrian is oblivious for the moment of the nearness of the car and of the speed at which it is approaching, ordinary care requires him to blow his horn, slow down, and, if necessary, stop to avoid inflicting injuries. He must make certain that pedestrians in front of him are aware of his approach.

■ As was said in the Louisiana case of Bergeron v. Department of Highways, La.App., 50 So.2d 337, the first duty of a motorist is to keep a sharp lookout ahead to discover the presence of those who might be in danger, and if he performs that duty and discovers that someone is in danger, then a second duty arises to use every possible available means to avert injury, and, if the motorist fails to perform that duty, his negligence is the proximate and immediate cause of the injury, and the last clear chance doctrine applies.

■ The beneficiaries for whom this action is brought are the widow and two minor children of plaintiff's intestate. In considering their actual damages for wrongful death, it is proper to consider not only pecuniary loss but mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, deprivation of the comfort of intestate's society and the loss of his experience, knowledge and judgment in managing his own affairs and those of his beneficiaries. Jennings v. McCowan, 215 S.C. 404, 55 S.E.2d 522; Mishoe v. Atlantic Coast Line R. Co., 186 S.C. 402, 197 S.E. 97.

Plaintiff's intestate was thirty-seven years of age, with a life expectancy of 31.75 years. § 26–12, Code of Laws of South Carolina, 1952. At the time of his death and for more than a year prior thereto, he was earning Forty Four ($44.00) Dollars, a week.

■ Based upon the foregoing Findings of Fact, Conclusions of Law and Opinion, I am of the opinion that plaintiff Ruth Greene, as Administratix of the Estate of

George B. Greene, deceased, should have judgment against the defendants O. Alex Hicklin and Heck Young in the sum of Forty Thousand ($40,000) Dollars.

Entry of appropriate judgment is directed accordingly, and

It Is So Ordered.