James E. COLLINS, Jr., Appellant,

v.

Herndon E. RISNER, d/b/a Capital Trucking Company, Appellee.

No. 7864.

United States Court of Appeals Fourth Circuit.

Argued June 18, 1959.

Decided Aug. 6, 1959.

Solomon Blatt, Jr., Barnwell, S. C., and Thomas B. Whaley, Columbia, S. C. (Whaley & McCutchen, Columbia, S. C., and Blatt & Fales, Barnwell, S. C., on brief), for appellant.

T. B. Bryant, Jr., and Fred R. Fanning, Jr., Orangeburg, S. C., for appellee.

Before HAYNSWORTH, Circuit Judge, and BARKSDALE and BRYAN, District Judges.

BARKSDALE, District Judge.

■ This diversity personal injury action has been twice tried in the district court. The jury being unable to agree upon a verdict at the first trial, a mistrial was declared and the judge refused defendant's motion for judgment in accordance with his motion for a directed verdict made during the trial. D.C., 23 F.R.D. 14. During the second trial, the judge reserved decision on defendant's motion for a directed verdict, made at the close of the evidence, and submitted the case to the jury, which returned a verdict for the plaintiff in the sum of $15,-000. Thereafter the judge granted defendant's motion that the verdict of the jury be set aside and that a judgment *non obstante veredicto* be entered for the defendant in accordance with his motion for a directed verdict. From this judgment for the defendant, plaintiff, now the appellant, has prosecuted this appeal. Inasmuch as the jury found for appellant, the evidence must be considered on this appeal in the light most favorable to him, and any conflicts in the evidence must be resolved in his favor. Webb v. Robinson, 4 Cir., 241 F.2d 99.

Viewing the evidence in this light, the facts may be briefly stated as follows:

Appellant, James E. Collins, Jr., a truck driver and route salesman for a bakery near Denmark, S. C., loaded his truck and left the bakery warehouse about 5:30 A.M., January 25, 1957, proceeding eastward through Denmark, on U. S. Highway 78, toward Bamberg, S. C. Two other bakery trucks left the warehouse about the same time. A few hundred yards east of Denmark, the bread trucks overtook appellee's large tractor trailer unit operated by Joseph Earwood, traveling in the same direction, and when it slowed down for a railroad crossing, Collins passed it, and very shortly one of the other bakery trucks, driven by one Jimmy Still, passed both the tractor trailer unit and the bakery truck driven by Collins. Thereafter, the three trucks, namely, the bakery truck driven by Still, the bakery truck driven

by Collins, and the tractor trailer unit, in that order, continued eastward toward Bamberg at the rate of from 45 to 50 miles per hour. It was dark and cloudy, but the visibility was good. Prior to the collision, all three vehicles had their lights on, and the blinker and turn-signal lights were in working order. After proceeding about three miles, in the same order, Still, who was traveling from 150 to 200 feet ahead of Collins, remembered he had forgotten some merchandise which he should have loaded at the warehouse, so he decided to turn around and go back to the warehouse for the forgotten merchandise. Knowing that the two trucks were close behind, he did not undertake to turn around immediately, but gave a right-turn signal, pulled about six or seven feet off the south side of the paved highway, and stopped, so as to enable the two following trucks to pass, before undertaking to turn around. At that point, the highway consisted of eighteen feet of concrete, and four and a half feet of asphalt paving on each side of the concrete, making a total width of twenty-seven feet of concrete and asphalt, and at least eleven feet of level grass-covered dirt shoulder on each side of the road. When Collins saw Still pull off to the right and stop, apprehending that Still was in some difficulty, he decided to stop and inquire of Still what the trouble was. So he slowed down, turned on his right-turn signal, pulled off to his right, and stopped immediately alongside Still's truck. When Collins began to slow down, he knew the tractor trailer unit was behind him, as he saw the glare or reflection of its lights in his rear-view mirrors, and knew it was coming down a slight grade. At that time, the tractor trailer unit was from 1,000 to 1,500 feet behind Collins. When Collins brought his truck to a stop, the right two wheels were on the dirt shoulder, most of his truck was off the paved portion of the highway, but both his left wheels were on the asphalt paving, the rear of his truck protruding over about half of the asphalt. At this point there was ample room for Collins to stop on the level grassy shoulder, completely off the paved portion of the highway, either behind or in front of Still. When Earwood, driver of appellee's tractor trailer unit, realized that Collins had stopped his truck ahead of him, he attempted to avoid a collision by swinging his vehicle to the left and stopping, but he did not succeed, and the right front of the tractor trailer unit collided violently with the left rear of the bakery truck, resulting in extensive damage to both vehicles and personal injury to both Collins and Earwood. Seeking to recover damages for his personal injuries, Collins instituted this action. The collision occurred from twelve to fifteen seconds after Collins stopped. He had only time to stop the truck, open the door to the right, ask "What is the matter?", and the impact occurred before Still could answer. The Collins truck was knocked into the air, turned around, and came to rest about twenty feet from where it had been standing. The tractor trailer unit left no skid marks prior to the collision, and proceeded approximately one hundred feet past Collins' truck. Collins' truck, loaded, weighed approximately six tons; the loaded tractor trailer unit weighed approximately twenty-five tons.

Appellant contends that there is credible testimony that Earwood, driver of the tractor trailer unit, admitted that he was asleep at the time of, or prior to, the collision. The only basis for this contention is the following testimony of Still: in answer to the question of what happened when he went up to see Earwood immediately after the collision, he said:

"Well, the front end was mashed in on him. And when I got up there I asked him if I could do anything for him, and he said 'What happened?', and I told him, I said 'You just hit my buddy'. and he said 'Your buddy?', and I said 'Yes, you hit my buddy'. He said 'I didn't know it'. I said 'You must have went to sleep'. And he said 'I must have'. He said 'I don't know'."

Although around noon of that same day, Still gave a written statement to counsel investigating the case, and was asked to tell about how the accident happened, he did not mention this conversation. Neither did he mention it to a State Highway Patrolman who interviewed him. When he did so testify at the first trial, he admitted that he had never mentioned this conversation to anyone but his wife. Earwood, driver of the tractor trailer unit, not only testified that he was wide awake at and before the collision, that he had only driven approximately seven hours and covered a distance of about 230 miles before the collision, but testified that he was not conscious of having made any such statement. He testified that as a result of the collision he was unconscious, "didn't know anything from the time I hit until I woke up in the hospital", the next day. Admittedly, his steering wheel had been driven into his stomach so tightly that a wrecker truck was required to release him, and a disinterested witness testified that, at the time Still was standing beside the trailer truck, Earwood was unconscious.

Holding that the evidence did not justify a finding that either Collins or Earwood was guilty of recklessness or gross negligence, the district judge eliminated all questions of gross negligence from the jury's consideration. The question of gross negligence on the part of both drivers having been eliminated from their consideration, the effect of the jury's verdict for the plaintiff constituted a finding of ordinary negligence on the part of defendant's driver Earwood, which was the sole proximate cause of the collision. The effect of the judge's setting aside the jury's verdict and rendering judgment n.o.v., constitutes a determination on his part that the plaintiff was guilty of contributory negligence as a matter of law, his negligence having contributed as a proximate cause to the collision.

■ Since on conflicting evidence, the jury found that defendant's driver, Earwood, was guilty of ordinary negligence, which finding was at least tacitly approved by the district judge, it is our conclusion that this finding was fully justified by the evidence. The jury might well have found that Earwood was negligent in operating the trailer truck at a speed greater than was reasonable and prudent under the circumstances, failing to have his vehicle under proper control, or failing to keep a proper lookout.

■■ Also we find no error in the conclusion of the district judge that plaintiff Collins was guilty of such contributory negligence, as a matter of law, as to bar his right of recovery. Sec. 46-481 of the Code of Laws of South Carolina is applicable, the pertinent part of which being:

"Upon a highway outside of a business or residence district, no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon a paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of such highway, * * *."

Appellant contends that the questions of whether or not Collins' truck was parked "upon a paved or main traveled part of the highway", and whether or not it was "practicable to stop, park or so leave such vehicle off such part of such highway", were questions for the jury, and it is true that, under different circumstances and upon different evidence, the submission of such questions to the jury has been approved. Jackson v. Edmondson, Tex.Civ.App., 129 S.W.2d 369; Howey v. Jordans, Inc., 223 S.C. 71, 74 S.E.2d 216.

However, here it clearly appears that the highway, at the point of collision, when first paved, consisted of a concrete strip eighteen feet wide. Later, the State Highway Department widened the highway by the addition of four and a half feet of asphalt paving on each side of the concrete. There can be no doubt that the "paved or main traveled part of the highway" included the entire

width of twenty-seven feet with its two types of paving. Nor can there be any doubt that, under the circumstances then and there existing, it was entirely "practicable" for Collins to stop his truck completely off the hard surface. It appears from plaintiff's own testimony that there was nothing whatever to prevent his stopping behind or in front of Still's truck completely off the hard surface. Undoubtedly, Collins violated the quoted statute and created the very hazard which the statute was enacted to prevent. It is equally obvious that, when Collins violated the statute by stopping with a considerable portion of his truck on the hard surface, and was almost immediately struck by the oncoming tractor trailer unit which he knew was close behind him, his dereliction was one of the proximate causes of the collision. Under such circumstances, it would seem that the language of the court in Sewell v. Hyder, 229 S.C. 480, 93 S.E.2d 637, 639 is most applicable when, speaking of a plaintiff's violation of the statute prohibiting passing another vehicle at an intersection, the court said:

"If the only reasonable inference to be drawn from all of the testimony is that the negligence of the complainant is a direct and proximate cause of the injury and damage, or that the negligence of the complainant contributed as a direct and proximate cause, then it would be the duty of the trial judge to order a nonsuit or direct a verdict against such plaintiff."

As will subsequently appear, we find it unnecessary to consider whether Collins was only guilty of ordinary negligence or whether his conduct constituted gross negligence or recklessness.

■ As previously stated herein, we have concluded that the jury's finding that Earwood, defendant's driver, was guilty of ordinary negligence was fully justified. But there remains the question of whether or not the district judge erred in not submitting to the jury the question of whether or not Earwood was guilty of gross negligence or recklessness, because, under South Carolina law, if Collins was only guilty of ordinary negligence, and Earwood was guilty of gross negligence or recklessness, then Collins' ordinary negligence would not preclude a recovery against the defendant, Earwood's principal.

"In this connection, two rules of law laid down by the South Carolina Courts, which were referred to by the judge in his charge, are relevant. In the first place, it is held that ordinary negligence on the part of a plaintiff contributing to an injury does not bar recovery if the contributing conduct on the part of the defendant is so grossly negligent as to imply wantonness, wilfulness or recklessness on his part. Marks v. I. M. Pearistine & Sons, 203 S.C. 318, 26 S.E.2d 835; Spearman v. Couch, 218 S.C. 430, 63 S.E.2d 161; Dawson v. South Carolina Power Co., 220 S.C. 26, 66 S.E.2d 322. * * *" Bruin v. Tribble, 4 Cir., 238 F.2d 12, 13.

■ We are satisfied that, as a matter of law, the evidence would not support a finding of gross negligence or recklessness on the part of Earwood, and that therefore the district court was correct in withdrawing from the jury any consideration of the question of gross negligence or recklessness on the part of Earwood.

As previously indicated, we are satisfied that the evidence was sufficient to justify the jury in finding that Earwood was negligent in operating his vehicle at a greater speed than was reasonable and prudent under the circumstances, failing to have his vehicle under proper control, or failing to keep a proper lookout. But notwithstanding appellant's contentions, we find no aggravating circumstances disclosed by the evidence sufficient to raise the ordinary negligence of Earwood to the higher degree of gross negligence, recklessness, or wilful and wanton conduct. There is no evidence that prior to the collision Earwood's speed was ex-

cessive for ordinary highway driving. Appellant contends that the extent of the damage resulting from the collision, and the distance traveled by the two vehicles after the collision, are circumstances from which the jury might properly deduce excessive speed. We cannot agree. When a moving vehicle, weighing twenty-five tons, collides with a stationary vehicle weighing only six tons, even if it be traveling at a very moderate speed, it is inevitable that extensive damage will result, and that there will be considerable forward progress of both vehicles. Although Earwood saw, or by keeping a proper lookout should have seen, Collins' right-turn signal, until the contrary appeared, he had a right to assume that Collins would not violate the statute and stop his truck on the paved portion of the highway.

Appellant contends that the evidence of Earwood's going to sleep is an additional circumstance sufficient to take the case to the jury on the question of gross negligence, and cites and relies on the North Carolina case of Harper v. Harper, 225 N.C. 260, 34 S.E.2d 185, a case in which the North Carolina Court undertook to apply the law of South Carolina, as the accident occurred in South Carolina. It is true that in the Harper case, the court approved the submission to the jury of the question of defendant's gross negligence. However, bearing in mind the very weak evidence that Earwood went to sleep at all and the complete lack of any evidence of any premonitory indications of drowsiness, the following quotation from the opinion (34 S.E.2d at pages 188, 189) clearly shows how readily distinguishable the Harper case is from the instant case.

"It is the duty of a motorist, while operating his automobile, to keep a proper lookout and to keep his car under proper control. There is evidence tending to show that defendant admits that he failed to do so. He attributes his inattention to drowsiness followed by complete unconsciousness. In any event, on this record, he either failed to keep a proper lookout and to give due attention to the manner of operation or, looking where he was going, he intentionally swerved his car to the left and drove his automobile down a thirty-foot embankment. His conduct can be explained only on one postulate or the other. It is more charitable to assume that his act was not deliberate.

"Even so, he knew he was drowsy. He had fallen asleep once before. Sleep, 'tired nature's sweet restorer', is usually indicated by certain premonitory symptoms, and does not come upon one unheralded. These premonitory symptoms were present on this occasion. If defendant disregarded these warnings and instead, knowing that he was in no condition to exercise that degree of alertness and care in keeping the lookout required of a motorist, continued to operate the automobile, then the inference that his conduct was not mere inadvertence but amounted to a conscious failure to be careful of the safety of others is permissible. The nature and quality of his act, whether an inadvertence or a conscious failure to perform a positive duty, was for the jury to decide."

No other decision declaring the law of South Carolina on the question of whether the driver's going to sleep constitutes ordinary or gross negligence, has been cited to us, nor do we find any. However, there is appended to the case of Antonen v. Swanson, 74 S.D. 1, 48 N.W. 2d 161, 28 A.L.R.2d 1, an exhaustive note entitled "Physical defect, illness, drowsiness, or falling asleep of motor vehicle operator as affecting liability for injury.", the subject of "Operator's act of falling asleep" beginning at page 44 of 28 A.L.R.2d.

As factors influencing the determination of whether or not the driver's going to sleep constitutes negligence, there are listed recent lack of sleep, length of time

at wheel, presence of premonitory symptoms, driving under the influence of liquor, and strenuous activities before driving.

On the question of whether or not the driver's falling asleep constitutes gross negligence, decisions from numerous states are summarized as follows, (28 A.L.R.2d at pages 60, 61):

"The numerous cases in which courts have considered the question of whether falling asleep while operating a car is in itself gross negligence are almost unanimously to the effect that the fact of falling asleep while driving is sufficient to establish a prima facie case of ordinary negligence only, but that it is not sufficient to take the case to the jury on the question of the operator's gross negligence. Stated differentially, if plaintiff in an action based on gross negligence shows merely that the operator of the motor vehicle fell asleep while driving, a directed verdict for the defendant is proper."

We think this general rule is applicable here. There is no evidence that prior to the collision Earwood nodded or felt any drowsiness. He had driven only seven hours and a half during the preceding twenty-four hour period. He did no driving on Thursday until he left Atlanta at 11:00 o'clock P.M., and drove approximately 230 miles to the scene of the accident, which took place shortly before 6:00 o'clock Friday morning, at which time he had been driving slightly less than seven hours, well within the allowable driving time of ten hours. The evidence tending to show that Earwood went to sleep, is so flimsy it is hardly, if at all, sufficient to justify a finding that he went to sleep. Certainly, this evidence, considered in connection with all the other evidence as to Earwood's conduct, only justifies a finding of ordinary negligence on his part.

It therefore follows that the judgment of the district court will be

Affirmed.